## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

CHARLES ROBERT WILCOX, JR.,     )
                                    )
      Plaintiff(s),             )
                                      )
      vs.                      )     Case No. 4:20 CV 1285 SRW
                                      )
ANDREW M. SAUL,[1]           )
Commissioner of Social Security    )
Administration,            )
                                      )
      Defendant(s).         )

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 17. Defendant filed a Brief in Support of the Answer, ECF No. 22, and Plaintiff filed a Reply, ECF No. 23. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

---

[1] At the time this case was filed, Andrew M. Saul was the Commissioner of Social Security. Kilolo Kijakazi became the Commissioner of Social Security on July 9, 2021. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Kilolo Kijakazi for Andrew M. Saul in this matter.

## I.      Factual and Procedural Background

On June 21, 2018, Plaintiff Charles Robert Wilcox, Jr. protectively filed an application

for supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.*[2] Tr. 123.

Plaintiff alleged an onset date of November 19, 2010. Tr. 15. Plaintiff's application was denied

on initial consideration, and he requested a hearing before an Administrative Law Judge

("ALJ"). Tr. 126-34.

Plaintiff and counsel participated in a hearing on February 21, 2020. Tr. 56-79. Plaintiff

testified concerning his disability, daily activities, functional limitations, and past work. *Id*. The

ALJ also received testimony from vocational expert ("VE") Mary Kathleen Schauwecker, M.S.

CDMS. *Id*. During the hearing, Plaintiff's counsel amended the alleged onset date to June 21,

2018. Tr. 59.

On March 24, 2020, the ALJ issued an unfavorable decision finding Plaintiff not

disabled. Tr. 12-32. Plaintiff requested a review of the ALJ's decision with the Appeals Council.

On July 20, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-6.

Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court

accepts the facts as presented in the parties' respective statements of facts and responses. The

Court will discuss specific facts relevant to the parties' arguments as needed in the discussion

below.

---

[2] The record reflects that Plaintiff previously filed for SSI on August 18, 2015, with an alleged onset date of January 25, 2008. Tr. 142-52, 164. On May 2, 2018, an ALJ determined Plaintiff to be not disabled after he was denied on initial review. Tr. 80-97.

## II.   Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant

cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged amended onset date of June 21, 2018. Tr. 17. Plaintiff has the severe impairments of degenerative disc disease lumbar spine, peripheral vascular disease, headaches, obesity, and anxiety. *Id.* Plaintiff did not have an impairment or combination of impairments which meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 17-20. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with the following limitations: no climbing, kneeling,

crouching, or crawling and occasional balancing and stooping. He is able to frequently reach, handle, finger, and feel. He is capable of performing simple, routine tasks throughout a workday in an occupation that does not require the claimant to communicate or interact directly with members of the general public on behalf of his employer.

Tr. 20.

The ALJ found that Plaintiff has no past relevant work. Tr. 27. The ALJ further found Plaintiff was born on August 20, 1982 and was 35 years old, which is defined as a younger individual age 18-44, on the date the application was filed. *Id*. Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ determined the transferability of job skills was not an issue because the Plaintiff did not have past relevant work. *Id*. Relying on the testimony of the VE and considering Plaintiff's age, education, work experience and RFC, the ALJ found there were jobs existing in significant numbers in the national economy which the Plaintiff could perform, including representative occupations such as addresser (*Dictionary of Occupational Titles* ("*DOT*") No. 209.587-010); document preparer (*DOT* No. 249.587-018); and polisher of eyeglass frames (*DOT* No. 713.684-038). Tr. 27-28. The ALJ concluded Plaintiff was not under a disability since June 21, 2018, the date the application was filed. Tr. 28.

## IV.    Discussion

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ erred by failing to adequately consider his testimony of frequent migraine headaches; and (2) the ALJ improperly considered Dr. Porter's opinion.

### A. The ALJ's Evaluation of Plaintiff's Migraine Headaches

At Step Two, the ALJ determined Plaintiff's headaches to be a severe impairment. Tr. 17. However, Plaintiff argues the ALJ did not properly consider his testimony regarding the frequency of his headaches by failing to cite to inconsistencies between the medical evidence and his subjective reports of pain. ECF No. 17 at 2. Plaintiff also disputes the ALJ's conclusion that

his headache treatment was conservative, and disagrees with the ALJ's reliance on his inconsistent work history as evidence to dispute his allegations of disabling limitations. Plaintiff further challenges the ALJ's failure to explicitly explain how his activities of daily living were inconsistent with his testimony of disabling migraine headaches. Plaintiff cites to treatment records in which he reported frequent headaches aggravated by light. *Id.* (citing 69-70, 361, 399, 406).

In formulating Plaintiff's RFC, the ALJ considered and summarized his hearing testimony. Tr. 20. Plaintiff testified to pain in his left leg with numbness and tingling; pain in his lower back; headaches and migraines with episodes of dizziness, nausea, and vomiting; and symptoms of anxiety, including panic attacks, social isolation, difficulty concentrating, and depressed moods. Tr. 20, 61-65, 67-70. He stated he is able to stand for 5 to 10 minutes, sit for 20 minutes, and lift no more than 30 pounds. Tr. 64-65. Plaintiff testified he is prescribed medication, including Gabapentin, Soma and Xanax, which helps relieve his symptoms, and he sees a therapist. Tr. 20, 63-64, 67-68. Plaintiff denied side effects from his medications. Tr. 66. In reviewing his testimony, the ALJ determined: "[w]hat the evidence suggests, . . . is that the claimant's symptoms may not exist at the level of severity asserted by the claimant's testimony at [the] hearing, and do not have the negative impact upon the claimant's ability to engage in work activity that has been alleged." Tr. 27.

The ALJ referenced Plaintiff's medical records from before the alleged amended onset date to summarize the background of his impairments. On August 9, 2017, Plaintiff appeared to the University of Missouri neurosurgery clinic on a referral from his primary care physician ("PCP"). Tr. 21, 333-34. The treatment record explained the history of Plaintiff's neurological issues as follows:

> The patient has a history of multiple concussion[s] due to long career as a
> professional wrestler. In addition to the concussions, the patient had TBI

7

(Traumatic Brain Injury) in 2015 when he was mowing [a lawn] and something flew up and hit patient in the back of the head. During that year, the patient suffered from memory loss, dizziness, unsteadiness, and weakness. He states these symptoms progressively got better and eventually resolved after one year. During this time, he had an MRI of the brain and MRI of the spine. These images revealed mild cerebellar ectopia. Additionally, the patient has suffered from daily headaches involving the occipital region of his head spanning to the right temporal region. He also endorses migraines that last a few days and are aggravated by stimulation. He was followed by a neurologist in the past for headaches but stopped following up due to personal differences. Patient also has a history of partial seizures, the last of which was over one year ago.

The patient currently endorses daily headaches, migraines occurring 1-2x/month, and intermittent blurry vision. He denies progressive weakness or numbness in extremities.

Tr. 333.

A physical examination during the neurology visit revealed primarily unremarkable results. Tr. 333-34. Plaintiff exhibited proper orientation to person, place, and time; intact memory; normal attention span and concentration; fluent speech; coherent thought process; full visual fields; normal motor tone and bulk; and mostly normal grip strength. *Id.* Plaintiff was, however, observed to be walking with a slight unsteadiness. Tr. 334. Plaintiff was instructed to follow up with his PCP for additional migraine management and advised that he did not need to schedule a follow up appointment with the neurosurgery clinic. *Id.* On August 14, 2017, Plaintiff was prescribed Fioricet[3] for headache treatment. Tr. 317.

On November 27, 2017, Plaintiff appeared to his PCP complaining of a recent onset of back pain and "associated symptoms," including headaches, difficulty walking, and trouble sleeping. Tr. 21, 311-12. Plaintiff was observed to have a normal posture with a slow, cautious, and stiff gait. A physical examination revealed no swelling, edema, or erythema; no paraspinous

---

[3] Fioricet is used to relieve tension headaches and is a combination of Acetaminophen, Butalbital, Caffeine. MedlinePlus, *Meclizine*, U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a601009.html (last visited Aug. 18, 2021).

muscle spasm; normal lumbosacral spine movements; normal sensation; moderate and medial low back tenderness; no ecchymosis; and 5/5 normal muscle strength. Plaintiff was diagnosed with "acute exacerbation of chronic low back pain" and directed to restart Prednisone, an anti-inflammatory, and Norco, a narcotic, as needed for pain.

On April 11, 2018, Plaintiff returned to his PCP reporting that two days prior he began to experience dizziness with symptoms of headache, upper respiratory infection, ear pain, tinnitus, hearing loss, neck pain, neck stiffness, and visual changes. Tr. 21, 306-08. Plaintiff's physical examination revealed normal results, and he was described to not be in any acute distress. Tr. 307. Plaintiff was prescribed Meclizine.[4] *Id.* The ALJ noted Plaintiff did not seek any additional treatment until four months later, on August 24, 2018, when he visited his PCP for edema caused by "stepping on a hole." Tr. 21, 346. An ultrasound of his left lower extremity was performed, which revealed that his "superficial femoral vein was noncompressible consistent with deep venous thrombosis." Tr. 21, 352.

On December 1, 2018, Plaintiff presented for a consultative examination with Dr. John Irlam. Tr. 22-24, 364-71. Dr. Irlam's report was based on Plaintiff's own summary of his medical conditions, thirteen pages of medical records, and a physical examination. Tr. 364, 367. Plaintiff reported his medication to be "somewhat" helpful although he continued to experience symptoms of pain, memory loss, difficulty reading, fatigue, cognitive difficulties, panic attacks, weakness, and vertigo. Tr. 364. Plaintiff stated his pain was typically a 10 out of 10 and "[n]oise and flashing lights tended to make his symptoms worse." *Id.* Plaintiff stated he was able to sit for 20-30 minutes, stand for 5 minutes, walk half of a block, and lift and carry 10 pounds repetitively and 20 pounds occasionally. Tr. 365. Plaintiff did not present with an ambulation device. Tr.

---

[4] "Meclizine is used to prevent and treat nausea, vomiting, and dizziness caused by motion sickness. It is most effective if taken before symptoms appear." MedlinePlus, *Meclizine*, U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682548.html (last visited July 26, 2021).

367. The ALJ found it notable that although Plaintiff reported panic attacks to Dr. Irlam, the medical record was devoid of any such complaints to a treating provider until almost a year later in September of 2019. Tr. 24, 364, 402.

On physical examination, and despite reporting vertigo during the appointment, Dr. Irlam described Plaintiff to be in no physical distress; negative for clubbing, cyanosis or edema in his extremities; alert with good eye contact; fluent speech; clear thought process; normal memory and concentration; fair hand-eye coordination; no palpable muscle spasms; normal muscle bulk and tone; decreased grip strength bilaterally with the ability to manipulate small objects, such as picking up a coin and grasping a pen; relatively severe slow and limping gait; and decreased monofilament sensation involving his left leg, left foot, and right hand. Tr. 365-67.

Dr. Irlam listed Plaintiff's diagnoses as: (1) positional vertigo; (2) resting tremor, bilateral hands; (3) peripheral vascular disease; (4) left groin pain with claimant reporting history of current deep venous thrombosis; (5) severe gait abnormality; (6) decreased monofilament sensation, left leg and foot, right hand, as well as intermittently involving the left hand without acute deficit on current exam; (7) bilateral rotator cuff pain, severe and diffuse spine pain, and bilateral knee and ankle pain with palpitation and passive range of motion; (8) claimant constantly shifted from sitting to standing position throughout examination; (9) severe low back pain with positive straight left testing; and (10) decreased muscle strength in bilateral grips and bilateral upper and lower extremities secondary to pain. Tr. 367-68.

On January 14, 2019, imaging of Plaintiff's cervical spine and left knee revealed normal results. Tr. 22, 373, 375. Imaging of his lumber spine showed "minimal degenerative change but no acute abnormality." Tr. 22, 374. On May 2, 2019, Plaintiff appeared to Dr. Matthew Porter at the South Central Missouri Community Health Center for medication refills and complaints of increased pain. Tr. 22, 393-95. Upon examination, Plaintiff was described as alert and oriented,

in no acute distress, cooperative, and exhibiting good insight, judgment, clear speech, and logical

thought process. He used a cane to ambulate. Dr. Porter noted that Plaintiff's left leg was slightly

swollen with an increase in erythema, but he appeared to have no clubbing, cyanosis, or edema

in his extremities. Plaintiff underwent a depression and anxiety screening which revealed mild

depression and severe anxiety. Tr. 24, 393. Plaintiff's medications were discussed, and Dr. Porter

increased his Gabapentin[5] dosage for neuropathy treatment. Tr. 394. Plaintiff requested Xanax

but was told to set up an appointment for review of his anxiety management. Tr. 24, 393.

On June 7, 2019, Plaintiff returned to Dr. Porter complaining of left leg swelling from

blood clots. Tr. 22, 396-98. Upon examination, Plaintiff's left extremity was described to have

"increased redness, warmth and painful to touch." Tr. 396. Plaintiff was prescribed Clindamycin

HCL.[6] On June 11, 2019, Plaintiff appeared for a follow up appointment in which he reported

the swelling to be "much better;" however, he complained of a recent onset of dizziness and

vomiting. Tr. 22, 399-01. Plaintiff was described to have a migraine with aura but without status

migrainosus. The migraine was not intractable. During the visit, he received a Toradol injection

for headache relief. The record does not indicate the need for any additional injections.

On September 12, 2019, Plaintiff appeared to Dr. Porter complaining of an active panic

attack. Tr. 24, 402-04. Plaintiff stated he had been out of his Xanax for one week. Tr. 402.

Despite his presentation, Plaintiff reported his anxiety to be unchanged or a little better and

attributed his issues to being unable to afford his medication. *Id.* A psychiatric examination

---

[5] "Gabapentin capsules, tablets, and oral solution are used along with other medications to help control certain types of seizures in people who have epilepsy. Gabapentin capsules, tablets, and oral solution are also used to relieve the pain of postherpetic neuralgia." MedlinePlus, *Meclizine*, U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a694007.html (last visited July 26, 2021).

[6] "Clindamycin is used to treat certain types of bacterial infections, including infections of the lungs, skin, blood, female reproductive organs, and internal organs. Clindamycin is in a class of medications called lincomycin antibiotics. It works by slowing or stopping the growth of bacteria." MedlinePlus, *Meclizine*, U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682399.html (last visited July 26, 2021).

revealed him to be alert and oriented with intact cognitive function, good eye contact, good judgment and insight, a full range of mood and affect, no auditory or visual hallucinations, clear speech, cooperative, logical thought process, and goal directed. *Id.* Dr. Porter noted Plaintiff was "making progress, slowly, with medications that are safer for him." *Id.*

On December 2, 2019, Plaintiff reported increased vertigo spells and migraines. Tr. 22, 405-07. A neurological exam was performed by Dr. Porter, which revealed no deficits. Dr. Porter described Plaintiff to be calmer than his last visit. Tr. 24, 405. Plaintiff brought up the option of filing for disability, and Dr. Porter recommended he speak to an attorney. Tr. 406. Plaintiff's BMI was recorded as 35.67. Tr. 405. The ALJ acknowledged Plaintiff's obesity and stated that the "effects of claimant's obesity have been considered in determining [his] residual functional capacity." Tr. 23.

The ALJ indicated that he considered Plaintiff's anxiety by limiting him to "simple, routine tasks with no public interaction." Tr. 23. Along with the previously cited records discussing Plaintiff's mental health, the ALJ referenced an October 2018 consultative psychological examination by Thomas J. Spencer, Psy.D. Tr. 359-61. During the examination, Plaintiff described his history of back problems, mental issues, including auditory and visual hallucinations, and neuropathy. Tr. 23, 359. Plaintiff expressed no issues with activities of daily living and described himself to be independent, despite falling in the shower a couple of times. Tr. 360. His reports of falling are not mentioned in the notes of any of his treating providers. Plaintiff stated his mood was generally anxious although "he pushes himself to get out of the house a couple times a day." *Id.* Plaintiff denied depression but stated he felt "helpless and hopeless at times." *Id.* Dr. Spencer observed Plaintiff to be "rather dramatic and he seemed to exaggerate his somatic and psychiatric concerns." Tr. 359-60. Plaintiff appeared with a cane but did not use it for ambulation. Tr. 361. Plaintiff denied a history of inpatient psychiatric treatment

and did not recall seeing a psychiatrist. Tr. 360. Plaintiff reported he occasionally uses marijuana, and stated he has been sober from alcohol for "years." Tr. 360-61.

Dr. Spencer performed a mental status examination and observed Plaintiff to have no obvious impairment in grooming or hygiene, did not appear to be in physical distress, had normal motor behavior although his insight and judgment was poor, and exhibited average intelligence. Tr. 361. Dr. Spencer opined Plaintiff had a mild impairment in his ability to learn, recall, and use information and to consistently stay on task, and mild to moderate impairment in his ability to relate to and work with others on a consistent basis. *Id.* The ALJ found these conclusions to be unpersuasive because they were "not consistent with or supported by the medical evidence of record, including Dr. Spencer's own examination of the claimant where he struggled to stay on task and was very circumstantial" and because his opinion was "not stated in vocationally relevant terminology." Tr. 26-27.

The ALJ considered the January 16, 2019 opinion of State agency medical consultant, David Marty, M.D., who opined Plaintiff was able to work at the sedentary exertional level with certain postural and environmental limitations. Tr. 26, 114-17. The ALJ found Dr. Marty's opinion to be persuasive, but included additional limitations to Plaintiff's RFC based on the underlying medical record documenting increased pain, left lower extremity swelling, recurrent headaches, and manipulative limitation due to a reduction in upper extremity and grip strength. Tr. 26.

The ALJ considered the February 10, 2020 Physical Medical Source Statement of treating physician, Dr. Porter, and found it unpersuasive. Tr. 26, 390-92. Dr. Porter listed Plaintiff's symptoms as "headaches (constant); shoulder/back/knees hip pain; dizziness every other day; [and] fatigue." Tr. 390. Dr. Porter opined that Plaintiff could never lift 50 pounds, crouch or climb; rarely twist, stoop, balance, crawl, finger, or feel; occasionally lift 20 pounds,

reach, or handle; frequently lift 10 pounds; and constantly lift less than 10 pounds. Tr. 391. Dr. Porter further opined that Plaintiff could sit for only 20-30 minutes before needing to change positions; sit for less than two hours in an 8-hour workday; stand for 10 minutes before needing to sit down or walk around; and stand for less than two hours in an 8-hour workday. *Id.* Dr. Porter indicated Plaintiff would need to take unscheduled breaks every hour, would be off task at least 25% of the day, and would be absent more than 4 days per month. Tr. 392. The ALJ found Dr. Porter's opinion to be inconsistent with the underlying medical record. Tr. 26.

In reviewing Dr. Porter's Medical Source Statement, the ALJ explained that while the evidence supported a limitation in Plaintiff's abilities to stand and walk, "objective findings d[id] not support a less than 2-hour sitting limitation, or a need to shift positions at will every hour." Tr. 26. The ALJ further found that "treatments d[id] not support off-task behavior or absences in excess of industry standards, as the claimant was noted to be cooperative with examinations." *Id.*

The ALJ also considered the October 15, 2018 opinion of State agency medical consultant, Dr. J. Edd Bucklew, Ph.D., and found it to be somewhat persuasive. Tr. 26, 109-12, 117-19. Dr. Bucklew opined Plaintiff was not significantly limited in his ability to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others. Tr. 118-19.

Dr. Bucklew further opined Plaintiff was moderately limited in his ability to carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. *Id.*

The ALJ found Dr. Bucklew's opinions to be somewhat persuasive because they were partially consistent with the underlying medical record. Tr. 26. The ALJ explained that Plaintiff required a more limiting RFC based on treatments notes documenting Plaintiff's continued reports of anxiety and panic attacks. *Id.*

In addition to the medical record, the ALJ considered the nature and effectiveness of Plaintiff's treatment which the ALJ described as "largely routine and conservative," his earnings record evidencing a poor and inconsistent work history, and daily activities. Tr. 25. Although Plaintiff advised one of his physicians that he had a "long career as a professional wrestler," Tr. 333, his documented earnings from 1989 to 2019 reflects a total lifetime income of approximately $8,500 with significant gaps in employment. *See* Tr. 208.

As for his activities of daily living, Plaintiff reported he resides in a house with his family; cares for three dogs with some help; has minimal issues independently maintaining his personal care; and is able to shop, pay bills, count change, handle a savings account, and use a checkbook. Tr. 25, 240-46. The ALJ cited to Plaintiff's reports of an inability to clean, cook or drive, and that although he spends time with others, he has difficulty getting along with people. *Id.* The Court finds it notable that although Plaintiff wrote in his Function Report that he cannot cook, Tr. 242, and does not drive, Tr. 243, he later testified he can make simple meals and drives "as often as [he] can," Tr. 71-72. The ALJ determined Plaintiff "engaged in a somewhat normal level of daily activity and interaction" and "[s]ome of the mental abilities and social interactions

required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Tr. 25.

Plaintiff argues the ALJ failed to cite to inconsistencies between the medical evidence and Plaintiff's reports regarding the frequency of his headaches. In making this argument, Plaintiff asserts his headaches were not treated conservatively because the evidence of record shows extensive prescription medications, including narcotics, and his poor work history and activities of daily living did not discount his reports of disabling headaches.

For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairments.[7] SSR16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a plaintiff makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at 8. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001).

When evaluating a plaintiff's subjective statements about symptoms, the ALJ must consider the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010) (citing *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009)). While an ALJ need not explicitly discuss each *Polaski* factor,

---

[7] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529; 416.929.

the ALJ nevertheless must acknowledge and consider these factors before discounting a plaintiff's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

The ALJ's findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir.2005). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). As discussed below, the Court finds the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints regarding headaches are based on substantial evidence in the record as a whole.

Plaintiff testified he has always suffered from a "little" headache and has "gotten used to [them] . . . over the years. Tr. 69-70. Plaintiff stated he "can bank on having at least one good migraine a week." *Id.* The ALJ acknowledged Plaintiff's testimony as well as his reports of dizziness, nausea, and vomiting. Tr. 19-20. The ALJ listed and considered the factors set out in *Polaski*, including Plaintiff's daily activities, pain, precipitating and aggravating factors, medications, functional limitations, work history, and medical evidence. Tr. 24.

The ALJ provided various reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his headache symptoms were not entirely consistent with the medical or other evidence in the record. The Court finds it significant that the ALJ referenced *every* treatment note specifically addressing Plaintiff's complaints of headaches and summarized such evidence within seven full pages of his determination. *See* 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's

subjective pain complaints are not credible in light of objective medical evidence to the contrary).

The medical records do not support Petitioner's claim of having "at least one good migraine a week." Tr. 69-70. In August of 2017, Plaintiff reported migraines occurring once or twice a month. Tr. 333. He claimed he was "followed by a neurologist in the past for headaches but stopped following up due to personal differences." *Id.* In April of 2018, Plaintiff complained of dizziness with headaches, but the treatment notes described him to be in no acute distress. Tr. 21, 306-08. In fact, the medical record as a whole repeatedly indicated he did not appear to be in acute distress during consultative examinations or treating visits, even when he was actively complaining of a headache or vertigo. Tr. 21, 364-65, 393, 396, 399, 402, 405. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (an ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers).

On October 12, 2018, Plaintiff appeared for a psychological evaluation with Dr. Spencer in which he reported a predisposition to migraines, but confirmed he was able to perform activities of daily living. Tr. 23, 359-61. Dr. Spencer observed Plaintiff to be "rather dramatic" and opined that "he seemed to exaggerate his somatic and psychiatric concerns." Tr. 23, 360. On May 2, 2019, Plaintiff reported headaches in the review of his symptoms, but his neurologic and psychological examinations were normal, and he was described to be alert and oriented with intact cognitive function, good eye contact, good judgment and insight, full range of mood and affect, clear speech, cooperative, exhibiting logical thought process, and goal directed. Tr. 394. *See Goff*, 421 F.3d at 792-93 (holding it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

On June 11, 2019, Plaintiff received a Toradol injection for migraine headache relief. Tr. 22, 399. Treatment notes do not reflect that his treating providers recommended any further injections. On December 2, 2019, Plaintiff reported increased vertigo episodes and migraines, but his neurological and psychological examinations showed no deficits. Tr. 22, 405. On January 16, 2019, Dr. Marty described Plaintiff's migraine and vertigo treatment as "sporadic" and suggestive of "intermittent symptoms." Tr. 117. The ALJ found Dr. Marty's opinion to be persuasive, but explicitly stated that he included additional limitations on Plaintiff's RFC due to his complaints of recurrent headaches. Tr. 26. By February 10, 2020, Plaintiff's treating physician, Dr. Porter, indicated he was no longer on opioids for pain control, Tr. 390, and Plaintiff consistently denied side effects from his medications, Tr. 66. To the extent Plaintiff identifies records which support Plaintiff's allegations, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

In conjunction with the medical evidence, the ALJ appropriately considered Plaintiff's activities of daily living, which included his own testimony that he helps care for three dogs, has minimal problems with personal care, shops in stores, spends time with others, and is able to pay bills, count change, handle a savings account, and use a checkbook. Tr. 25. Notable to the Court is Plaintiff's testimony that he has a driver's license and drives "as often as [he] can, at least once a day," paints, can make simple meals, and watches "history shows, . . . things that make [his] mind work." Tr. 70-74. On October 12, 2018, during his evaluation by Dr. Spencer, Plaintiff affirmatively reported that he "maintains his activities of daily living." Tr. 360. Plaintiff's reports of his abilities support the ALJ's finding that his daily activities are inconsistent with his testimony as to the duration, frequency, and intensity of his headache or migraine pain.

Additionally, evidence of medication resulting in relative relief may diminish the credibility of a claimant's complaints. *See Guiliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005). Here, the record contains evidence of some relief from medication. Plaintiff testified he was prescribed medication, which assists in reducing his pain. Tr. 20, 63-64, 67-68. He also reported to Dr. Irlam that "medication helps relieve his symptoms." Tr. 364. By May 2, 2019, Dr. Porter recommended reducing and titrating off Soma, his neuropathy prescription. Tr. 394.

Moreover, the Court cannot find any error in the ALJ's conclusion that Plaintiff's treatment was conservative. While the record indicates Plaintiff appeared to a neurosurgery clinic prior to his alleged onset date, he was not directed to maintain regular appointments with a neurosurgeon, and was instead told to follow up with his PCP for migraine management. Tr. 21, 333-34. Plaintiff's treatment from his PCP for all impairments consisted of both narcotic and non-narcotic prescriptions, although the treatment notes indicate his primary medication for migraine relief was Fioricet, a non-narcotic. Tr. 221, 396, 399, 402-03, 405-06. *See e.g., Trudell v. Saul*, No. 4:20-CV-639-RWS, 2021 WL 1238215, at *6 (E.D. Mo. Apr. 2, 2021) (describing treatment consisting primarily of narcotic pain medication as conservative). Further, Plaintiff went months before needing to follow up with his treating provider. For example, the ALJ noted that Plaintiff did not seek any treatment from April 11, 2018 to August 24, 2018, when he appeared to his PCP for edema caused by "stepping on a hole." Tr. 21, 346.

The Court does not find the ALJ erred in determining Plaintiff's earning records "show[ed] a poor and inconsistent work history . . . [and] raise[d] some questions as to whether [his] alleged unemployment was actually the result of medical problems or rather a choice not to work." Tr. 25. The ALJ correctly cites to the evidence in the administrative record which documents Plaintiff's earning history. Plaintiff made approximately $8,500 over thirty years with significant gaps in employment. "A sporadic and varied work history, including evidence of

20

years with no earnings, may support an inference that there are other reasons than the alleged disability keeping plaintiff from being gainfully employed." *Markhart-Collier v. Saul*, No. 1:18-CV-75-RWS, 2019 WL 4750332, at *4 (E.D. Mo. Sept. 30, 2019) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir.1993) ("a sporadic work history is relevant to the ALJ's credibility analysis")).

In conclusion, the Court finds the ALJ's evaluation of Plaintiff's subjective complaints is based on substantial evidence in the record as a whole and is consistent with the regulations and case law.

### B. The ALJ's Consideration of Dr. Matthew Porter's Opinion

Plaintiff argues the ALJ erred in finding Dr. Porter's February 10, 2020 Physical Medical Source Statement unpersuasive by not citing to inconsistencies between the medical evidence and Dr. Porter's opinions of disabling limitations. ECF No. 17 at 6-11. For the following reasons, the Court finds the ALJ's decision is supported by substantial evidence in the record as a whole and is consistent with the Social Security Administration Regulations and case law.

Dr. Porter is Plaintiff's PCP. Tr. 63. Within his Physical Medical Source Statement, Dr. Porter opined that Plaintiff could never lift 50 pounds, crouch or climb; rarely twist, stoop, balance, crawl, finger, or feel; occasionally lift 20 pounds, reach, or handle; frequently lift 10 pounds; and constantly lift less than 10 pounds. Tr. 391. Dr. Porter further opined Plaintiff could sit for only 20-30 minutes before needing to change positions; sit for less than two hours in an 8-hour workday; stand for 10 minutes before needing to sit down or walk around; and stand for less than two hours in an 8-hour workday. *Id.* Dr. Porter indicated Plaintiff would need to take unscheduled breaks every hour, would be off task at least 25% of the day, and would be absent more than 4 days per month. Tr. 392.

The ALJ found Dr. Porter's opinion to be inconsistent with the underlying medical record for the following reasons:

> Overall, this opinion is not consistent with or supported by the medical evidence of record. While the evidence supports a limitation in the claimant's ability to stand and/or walk, objective findings do not support a less than 2-hour sitting limitation, or a need to shift positions at will every hour. Additionally, the opinion is somewhat internally inconsistent in rarely fingering and feeling, but occasionally lifting/carrying 20 pounds. Finally, treatments do not support off-task behavior or absences in excess of industry standards, as the claimant was noted to be cooperative with examinations.

Tr. 26.

For claims like Plaintiff's filed after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

The rules make clear, however, that supportability and consistency are the "most important factors;" therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how she considered the remaining factors. *Id. See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources,

22

deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" (alterations omitted)).

Plaintiff agrees that the ALJ followed the correct standard in considering the supportability and consistency of Dr. Porter's opinion, but he argues the ALJ's conclusions were not supported by substantial evidence in three ways. ECF No. 17 at 7-8.

First, Plaintiff asserts the ALJ was incorrect in determining the medical evidence did not support Dr. Porter's opinion of a 2-hour sitting limitation and need to shift positions every hour. Plaintiff cites to Dr. Irlam's December 2018 consultative examination where he was found to have pain, monofilament sensation, an inability squat, difficulty getting up and down from the examination table, and was observed to constantly shift from the standing position. *Id.* at 8 (citing Tr. 367). Plaintiff points to Dr. Porter's May 2, 2019 treatment note indicating he had a slightly swollen left leg with chronic statis, chronic pain, and was prescribed a muscle relaxer. *Id.* (citing Tr. 394). Plaintiff also references Dr. Porter's June 11, 2019 treatment note where he was noted to occasionally "shout out w[ith] his leg/back spasm (chronic)." *Id.* (citing Tr. 399).

In response, the Commissioner argues that Plaintiff's reliance on Dr. Irlam's consultative examination is misplaced. The Commissioner points to the January 16, 2019 RFC assessment by Dr. Marty, who reviewed Dr. Irlam's opinions, and determined Plaintiff would still have the ability to sit for 6 hours in an 8-hour workday with only normal breaks and without the need to shift positions. ECF No. 22 at 11 (citing Tr. 113-17).

Second, Plaintiff asserts the ALJ erred in finding Dr. Porter's assessment to be "somewhat internally inconsistent" because Plaintiff could rarely finger and feel, but could also occasionally lift or carry 20 pounds. Plaintiff argues those two activities are distinguishable from each other, and the ALJ did not explain how they were inconsistent.

In response, the Commissioner argues the ALJ's evaluation was not in error because the two are reasonably inconsistent in that "Plaintiff [would have] to pick up an object to be able to lift and carry it." Additionally, the Commissioner points to Dr. Irlam's report, which reflects Plaintiff had no difficulty bilaterally with fine and gross manipulative movements using his hands and fingers, and was able to dress and undress, button and unbutton his shirt, zip and unzip his pants, tie his shoelaces, carry and handle his personal belongings, open the door using the door knob, squeeze the blood pressure cuff bulb, pick up and grasp a pen and write a sentence, pick up a coin, and pick up and hold a cup. ECF No. 22 at 12 (citing Tr. 366-67, 371). The Commissioner further cites to Dr. Marty's opinion that Plaintiff does not have manipulative limitations and can perform unlimited reaching, handling, fingering, and feeling. *Id.* (citing Tr. 115). The Commissioner also points to the fact that the record is inconsistent as whether Plaintiff required a cane since his use of an ambulation device during examinations was not persistent. Tr. 359, 361, 367.

Lastly, Plaintiff argues the ALJ erred in discounting Dr. Porter's opinion that he would be off-task or absent more than industry standards because he was cooperative with medical examinations. Plaintiff cites to Dr. Spencer's October 2018 consultative examination in which he was described as verbose and loud, with poor insight and judgment, circumstantial flow of thought, anxious, and struggling to stay on task. ECF No. 17 at 9 (citing Tr. 360-61). Plaintiff also references Dr. Porter's May 2, 2019 treatment note where he described him to be anxious. *Id.* (citing Tr. 394). Plaintiff argues these records supports the opinion that he would miss work and be off-task.

In response, the Commissioner, points to the excerpts in the medical record evidencing Plaintiff's ability to maintain good eye contact, cooperation during examinations, fluent speech, clear thought processes, normal memory, and good concentration. ECF No. 22 at 13 (citing Tr.

365-67, 393-94, 399, 402, 405). The Commissioner also referenced Dr. Bucklew's opinion that Plaintiff could perform moderately complex tasks, which contradicted Dr. Porter's opinion. *Id.* (citing Tr. 119, 392).

The Court finds the ALJ did not err in finding Dr. Porter's Physical Medical Source Statement unpersuasive. Plaintiff attempts to find error in the ALJ's evaluation of Dr. Porter's opinion by citing to specific records which support the limitations in Dr. Porter's report. The Commissioner counters Plaintiff's arguments by pointing to other records which do not support such limitations. The ALJ did not commit reversible error simply because he weighed Dr. Porter's medical source statement differently than Plaintiff. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (upholding the ALJ's decision when the ALJ acknowledged the medical evidence the plaintiff focused upon but placed different and permissible weight on the evidence). It is the role of the ALJ to weigh and resolve conflicts in the medical evidence presented. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006).

The ALJ assessed Dr. Porter's medical source statement in light of the records as a whole. While Plaintiff is correct that Dr. Irlam noted his tendency to shift positions during an evaluation, and other records documented his complaints of pain and anxiety, the ALJ exhaustively summarized these and other records throughout his determination. In weighing the medical evidence, the ALJ pointed to specific inconsistencies, including progress reports indicating Plaintiff rarely appeared in acute distress, was able to manipulate small objects, irregularly used an ambulation device, and often exhibited good judgment, normal memory and concentration, clear thought, and cooperation during examinations. Contrary to Dr. Porter's analysis, Dr. Bucklew opined Plaintiff would be able to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ also

considered radiological imaging showing minimal degenerative changes in his lumbar spine and normal cervical spine and left knee results. Moreover, Plaintiff's activities of daily living appeared to show limited restraints.

"The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, No. 1:20-CV-51-DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). When read in context, as part of the overall discussion of Plaintiff's RFC, the Court finds the ALJ appropriately considered the medical and nonmedical evidence in the record. The ALJ's thorough review of the record supports his evaluation of Dr. Porter's opinion.

Based on a careful review of the parties' briefings and the underlying record in this action, the Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record as a whole and is not conclusory. Where substantial evidence supports the Commissioner's decision, the decision may not be reversed merely because substantial evidence may also support a different outcome. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (citing *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992)).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Charles Robert Wilcox, Jr.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

So Ordered this 30th day of December, 2021.

*/s/ Stephen R. Welby*
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE